862 A.2d 419

**Scott Alan PETE**

v.

**STATE of Maryland.**

**No. 19, Sept. Term, 2004.**

Court of Appeals of Maryland.

Dec. 6, 2004.

48

Brian L. Zavin, Asst. Public Defender, Julia Doyle Bernhardt, Asst. Public Defender (Nancy S. Forster, Public Defender, on brief), for petitioner.

Celia Anderson Davis, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on brief), for respondent.

Argued before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA and GREENE, JJ.

HARRELL, Judge.

We issued a writ of certiorari in this case to explore again the bounds of § 6–221 of the Maryland Criminal Procedure Article of the Maryland Code, which allows a sentencing court discretion to suspend a defendant's sentence and order probation on "the conditions that the court considers proper." Md.Code (2001), § 6–221.[1] Our exploration leads us to conclude that the restitution ordered in this case was an illegal sentence and not properly imposed as a condition of probation.

Scott Alan Pete was convicted, after a bench trial in the Circuit Court for Dorchester County, of second degree assault and reckless driving, among other charges included in Case No. 11332.[2] He was sentenced to eighteen months imprisonment for the assault, with all but two months suspended in

---

1. All Maryland code citations, unless otherwise noted, will be to the Criminal Procedure Article (2001) in effect at the time of Pete's trial.

2. Pete also was convicted, under Case No. 11332, of attempting to elude Patrolman Michael Cheesman by failing to stop (Count 8), one count of failing to stop at the scene of an accident with bodily injury (Count 9), and one count of failing to return and remain at the scene of an accident (Count 10). During the same trial, although not relevant to the issues raised in Pete's petition for writ of certiorari, he was convicted in Case No. 11333 of second degree assault of Deputy Sheriff Timothy Eberling, malicious destruction of property, attempting to elude Deputy Eberling by failing to stop, and attempting to elude Deputy Eberling by fleeing on foot.

favor of three years probation upon his release. He also was fined $250 for the reckless driving conviction. As one of the conditions of probation, Pete was ordered to make restitution in the amount of $355.06 to the victim of the assault and $6,490.53 to the Local Government Insurance Trust (LGIT) for repairs to Patrolman Michael Cheesman's police cruiser, which was damaged in the incident underlying the reckless driving conviction.

Pete appealed to the Court of Special Appeals, challenging, among other things, the Circuit Court's restitution order. The intermediate appellate court, in an unreported opinion, affirmed the trial court's judgment. We granted Pete's petition for writ of certiorari, 381 Md. 324, 849 A.2d 473 (2004), to consider the following questions:

1. Did the trial court have authority to order, as a condition of probation for assault, restitution for damages directly resulting from an unrelated act of reckless driving—an offense other than the conviction on which the court suspended sentence and imposed probation?

2. Where a court orders restitution for damages resulting from the commission of a non-jailable offense, may the court order the restitution paid as a condition of probation for an unrelated offence which carries a maximum prison sentence of ten years' imprisonment?

We conclude that the trial court's restitution order with regard to LGIT, as a condition of probation, is an illegal sentence. This is so because restitution to the LGIT was unavailable, as a matter of law, as a sentencing option for either the second degree assault or reckless driving convictions in this case.[3] We shall vacate that portion of the restitution order, and the parallel condition of probation for the second degree assault conviction, requiring payment of $6,490.53 to the LGIT.

---

3. We need not, and do not, decide Pete's second question.

## I.

### A.

On 23 April 2002 Pete entered the Cambridge apartment of Susan Raickle and, during an argument, hit Ms. Raickle on the back of the head.[4] Ms. Raickle called the police after Pete left the apartment and Officer Gilbert McCall responded to the police call at 3:59 p.m. After a brief investigation, the police broadcast a lookout for Pete, alerting that, among other things, he may have a gun.[5]

At 4:45 p.m. Patrolman First Class Michael Cheesman, while in his marked police car, heard a radio dispatch to be on the lookout for Pete and that he likely would be driving a late model, tan Ford pickup truck. At approximately 5:45 p.m., Patrolman Cheesman saw a man, resembling the broadcast description of Pete, in a truck (also matching the given description) stopped at a traffic light at the corner of Cedar Street and Academy Street in Cambridge. After driving past the person in the truck to confirm the apparent identification, Patrolman Cheesman turned his vehicle around and activated his overhead lights in an attempt to effectuate a traffic stop. Pete turned onto Hughlett Street after the police vehicle closed to within approximately twenty feet of the truck.

Patrolman Cheesman testified that Pete drove the truck away from his police cruiser at a "very fast rate," characterizing his speed as "well above 20—a lot of dust was thrown up off the roadway." He later testified on cross-examination that, in his opinion, Pete "was trying to get away from [him]." Neither Pete nor his passenger acknowledged seeing Patrolman Cheesman in pursuit with the cruiser's overhead lights activated.

---

4. Ms. Raickle incurred $355.06 in costs associated with her trip to the emergency room following the incident.

5. Ms. Raickle testified that she told the police that, at the time of the assault, Pete had a handgun. The police later would discover that Pete had brandished a replica of a handgun in Ms. Raickle's apartment.

As Pete approached Washington Street on Hughlett Street, he stopped abruptly, slamming on his brakes, five feet beyond the intersection's stop line. Patrolman Cheesman testified that the truck's "front end went down[,] [t]he back end went up" when this stop took place. The police cruiser struck the rear of the truck, resulting in $6,490.53 in damage to the cruiser. Pete left the accident scene, headed towards Maryland Route 50.[6]

## B.

At Pete's sentencing on 22 August 2002, the trial judge stated:

So, in Case No. 11332 the Court sentences you to 18 months to the Dorchester County Detention Center, and I'm going to suspend the last six months of that sentence. Now, that's on—only on Count 1, the second-degree assault upon Susan Raickle. And you'll be on probation for a period of 3 years, subject to the standard conditions of probation, the special conditions of probation, the special conditions that you avoid contact with Susan Raickle and that you pay any fines ordered in this case, that is, Case No. 11332 and that you make restitution within 3 years in the amount of $6,845.59, and of that total $355.06 would be to Dorchester General Hospital, and $6,490.53 would be to the Local Government Insurance Trust.

Now, as to the next count, reckless driving, the Court imposes a fine of $250. As to attempting to elude police in an official police vehicle by failing to stop, the court imposes a sentence of 4 months to the Dorchester County Detention Center. That will be consecutive to the sentence imposed on Count 1. And on count, failure to stop vehicle at the scene of accident involving bodily injury, the Court sentences you to 6 months to the Dorchester County Detention Center and that'll be consecutive to the 4 months on at-

---

6. Pete later would be apprehended after assaulting a police officer, committing malicious destruction of property, and attempting to elude police. *See supra,* note 2.

tempting to elude police in an official police vehicle by failing to stand and also ... [by] failing to stop, and also consecutive to the 18–month sentence on Count 1, that is, second-degree assault upon Susan Raickle, 16 months of which were suspended.

On the tenth count, failure to return and—return to and remain at the scene of accident involving attended vehicle, the Court sentences you to 6 months to the Dorchester County Detention Center, and that'll be concurrent to other sentences imposed in Case No. 11332. So—that's a total to serve of 12 months.[7]

The Court's order for probation, also signed on 22 August 2002, ordered three years of probation for the second degree assault on Ms. Raickle. The probation order listed several conditions for Pete's supervised probation, including that he pay $355.06 to the Dorchester General Hospital for Ms. Raickle's hospital visit and $6,490.53 to the LGIT.[8] The probation order also included conditions attributable to specific counts: a $250 fine on the reckless driving conviction, and imprisonment for convictions under Counts 8, 9, and 10. Lastly, the

---

**7.** Pete points out an apparent typographical error in the transcript, resulting in an inaccurate reflection of the actual sentence imposed. He suggests that the first sentence of the transcript excerpt quoted above should read, "So, in Case No. 11332 the Court sentences you to 18 months to the Dorchester County Detention center, and I'm going to suspend the last six[teen] months of that sentence." (Emphasis added). The State contends that the sentencing proceeding transcript quoted in the text of this opinion accurately reflects the trial court's intent to address "the total time of incarceration, the total term of probation, the total amount of restitution, and then the specific terms and fines for each of the five criminal counts in case number 11332." It offers no typographic triage, however, to resolve the arithmetical puzzle occasioned by its reading of the transcript that places Pete's unsuspended second degree assault sentence at ten months and his total unsuspended jail sentence at twenty-two months, rather than the two and twelve months, respectively, the court later specified. We resolve this conflict by looking to the terms and conditions of the probation order itself, *infra*, at 6–7. Pete's view is the correct one.

**8.** The probation order also ordered Pete to pay court costs of $145.00 and ordered him to avoid contact with Ms. Raickle for three years.

order stated that he must pay his fine and the ordered restitution within three years.

In its unreported opinion the Court of Special Appeals addressed Pete's argument that the restitution order constituted error because the $6,490.53 to be paid to the LGIT had no nexus to the assault crime underlying the probation order. The intermediate appellate court observed that restitution is generally available as part of a sentence for a criminal conviction under § 11–603 or as a condition of probation under § 6–221. Contrary to Pete's assertion that restitution to a victim should be available only when the injury is a direct result of the criminal conviction from which it flows, the Court of Special Appeals held that restitution was available as a condition of probation for "related criminal conduct for which criminal liability has been adjudicated."

## II.

### A.

At the outset, we examine the probation order to determine its terms and conditions. Probation was ordered relative to Pete's second degree assault conviction. He received probation for three years with explicit conditions that required completion within that period—conditions that, if left uncompleted, would result in him serving the suspended sixteen months of his sentence for the second degree assault conviction. He first had to complete his effective total of twelve months incarceration under Case No. 11332—two months for the second degree assault, four months for Count 8 and six months for Count 9, consecutive to the assault sentence, and six months for Count 10, concurrent to the assault and Counts 8 and 9. He also had to pay a fine of $250.00 as punishment for his reckless driving conviction. More important to this case, he had to make restitution of $6,490.53 to the LGIT. This requirement was included without a specific reference to the reckless driving count.

## B.

 Restitution under Maryland's Criminal Procedure Article is "a *criminal sanction*, not a civil remedy." *Grey v. Allstate Ins. Co.,* 363 Md. 445, 451, 769 A.2d 891, 895 (2001) (emphasis in original).[9] It serves at least three distinct purposes. First, it "is a form of punishment for criminal conduct." *Songer v. State,* 327 Md. 42, 46, 607 A.2d 557, 559 (1992). Second, it is intended to rehabilitate the defendant. *Anne Arundel County v. Hartford Accident and Indem. Co.,* 329 Md. 677, 685, 621 A.2d 427, 431 (1993) (citing *Lee v. State,* 307 Md. 74, 78, 512 A.2d 372, 374 (1986)). Lastly, it affords "the aggrieved victim recompense for monetary loss." *Id.* (quoting *Lee v. State,* 307 Md. 74, 78, 512 A.2d 372, 374 (1986)).

 In Maryland, restitution may be ordered, with qualifications, as a direct sentence for a crime or delinquent act, in addition to any other penalty prescribed by the underlying sentencing or remedial statute. § 11–603(a). Sentencing courts also may order restitution under the broader powers of probation after conviction, "the court may suspend the imposition or execution of sentence and place the defendant on probation on the conditions that the court considers proper." § 6–221. We previously commended the use of restitution as a condition of probation: "[a] court which orders restitution does a certain solomonic justice for the aggrieved victim who is entitled to requittal of that unlawfully taken or reparation for injury criminally inflicted; thus, restitution as a probationary tool has an understandable appeal." *Coles v. State,* 290 Md. 296, 305, 429 A.2d 1029, 1033 (1981). Yet, the broad power to order conditions of probation under § 6–221 is not boundless. *See, e.g., Bailey v. State,* 355 Md. 287, 299, 734 A.2d 684, 690 (1999) (holding that home detention as a condi-

---

**9.** The restitution provisions of § 11–603 of Maryland's Criminal Procedure Article were re-codified from Article 27, § 807, without substantial change, by the Acts of 2001, chapter 10, § 1, effective 1 October 2001. For a thorough review of the history of restitution, see Judge Wilner's discussion in *Grey v. Allstate Insurance Company,* 363 Md. 445, 450–62, 769 A.2d 891, 894–900 (2001).

tion of probation under § 641A of Article 27 [10] is improper without explicit statutory authorization); *Sheppard v. State*, 344 Md. 143, 154, 685 A.2d 1176, 1181 (1996) (holding improper a probation order under § 641A of Article 27 forbidding a defendant from driving, even if the Maryland Transit Authority, which had specific regulatory power over driver's license suspensions under the Transportation Article, gives the defendant a license); *Walczak v. State*, 302 Md. 422, 433, 488 A.2d 949, 954 (1985) (holding that probation order under § 641A of Article 27 was an illegal sentence when it ordered restitution to be paid by a defendant to a victim of an alleged crime for which the defendant was not convicted). If a sentencing court exercises its discretion under § 6–221, it may grant probation regardless of whether the defendant was convicted of a crime "punishable by fine or imprisonment or both." § 6–225(b).

■ We determine that restitution to the LGIT in this case was unavailable under § 11–603 for the reckless driving charge, the State's contention to the contrary notwithstanding. Even though the damage to Patrolman Cheesman's police cruiser, on these facts, was undoubtedly a direct result of the reckless driving, reckless driving is not a "crime" for which restitution may be ordered. Under § 11–603, restitution may be ordered to a victim "as a direct result of the crime...." § 11–603(a)(1). [11] A crime includes "a violation of the Transportation Article that is punishable by a term of confinement." § 11–601(d)(2). Any person convicted of reckless driving under § 21–901.1 is guilty of a misdemeanor and only "subject to

---

10. Section 6–221 of Maryland's Criminal Procedure Article was recodified from Article 27, § 641A, without substantive change, by the Acts of 2001, chapter 10, § 1, effective 1 October 2001.

11. Section 11–603 reads, in relevant part,

 (a) *Conditions for judgment of restitution.*—A court may enter judgment of restitution that orders a defendant or child respondent to make restitution in addition to any other penalty for the commission of a crime or delinquent act, if:

 (1) as a direct result of the crime or delinquent act, property of the victim was stolen, damaged, destroyed, converted, or unlawfully obtained, or its value substantially decreased....

a fine of not more than $1,000." Md.Code (1977, 2002 Repl. Vol.), § 21–101(g) of the Transportation Article.[12] Here, Pete received a $250 fine and was not eligible for punishment "by a term of confinement" for his reckless driving conviction under § 21–901.1 of the Transportation Article; therefore, restitution was not available to the sentencing court as a direct sentence.[13]

■ We also conclude, upon further analysis, that restitution to the LGIT as part of a sentence for the second degree assault conviction was inappropriate under § 11–603 because the damage to Patrolman Cheesman's cruiser did not arise as a "direct result" of the second degree assault on Ms. Raickle. The term "direct result of the crime" appeared first in the Restitution for Crimes Act of 1977.1977 Md. Laws, Chap. 581 (H.B.1680); Md.Code (1957, 1976 Repl.Vol., 1977 Cum.Supp.), Art. 27 § 640(b). We recently observed, in determining whether daytime housebreaking, after it was abolished as a crime, nonetheless remained a "crime of violence" for purposes of sentencing for an illegal possession of a firearm conviction, that:

> The chief goal of statutory interpretation is to discover the actual intent of the legislature in enacting the statute, and the legion of cases that support this proposition need not be repeated here. In fact, all statutory interpretation begins, and usually ends, with the statutory text itself for the legislative intent of a statute primarily reveals itself through the statute's very words. A court may neither add nor delete language so as to reflect an intent not evidenced in the plain and unambiguous language of the statute; nor may it construe the statute with forced or subtle interpretations that limit or extend its application. In short, if the words of a statute clearly and unambiguously delineate the

---

12. All citations to the Maryland Transportation Article will be to the 2002 Replacement Volume.

13. Probation with restitution might have been an appropriate sentence for a reckless driving conviction under §§ 6–221 and 6–225 of the Criminal Procedure Article. *See, infra,* note 18, at 21 and 22.

legislative intent, ours is an ephemeral enterprise. We need investigate no further but simply apply the statute as it reads.

In some cases, the statutory text reveals ambiguity, and then the job of this Court is to resolve that ambiguity in light of the legislative intent, using all the resources and tools of statutory construction at our disposal. However, before judges may look to other sources for interpretation, first there must exist an ambiguity within the statute, i.e., two or more reasonable alternative interpretations of the statute. Where the statutory language is free from such ambiguity, courts will neither look beyond the words of the statute itself to determine legislative intent nor add to or delete words from the statute. Only when faced with ambiguity will courts consider both the literal or usual meaning of the words as well as their meaning in light of the objectives and purposes of the enactment. As our predecessors noted, "We cannot assume authority to read into the Act what the Legislature apparently deliberately left out. Judicial construction should only be resorted to when an ambiguity exists." Therefore, the strongly preferred norm of statutory interpretation is to effectuate the plain language of the statutory text. . . .

*Price v. State*, 378 Md. 378, 387–88, 835 A.2d 1221, 1226 (2003) (citations omitted).[14]

This is not the first time we have interpreted the restitution statute. In *Grey*, we resolved whether a restitution order was

---

**14.** There is little in the legislative history of H.B. 1680 to suggest that "direct result of the crime" means anything other than that discerned from the plain language. The history of H.B. 1680 shows that the Director of the Department of Legislative Reference of the General Assembly had sought, and received, the existing restitution statutes of the Colorado, Georgia, and Oklahoma code from their respective legislative bodies. Of these statutes, only the Oklahoma statute provided specifically that, " 'Monetary restitution' shall mean the sum paid by the defendant to the victim of his criminal act to compensate that victim for the economic loss suffered as a *direct result* of the criminal act of the defender." 1976 Okla. Sess. Laws c. 160, § 5 (emphasis added).

a civil judgment sufficient to allow the intended recipient victims of a vehicular manslaughter crime to attach the proceeds of the defendant's automobile insurance policy. 363 Md. at 449–50, 769 A.2d at 894. In concluding that restitution by itself was insufficient to allow the victims to attach the defendant's insurance proceeds based on civil liability for the accident, we explained, "[a]n order of restitution entered under § 807 [currently § 11–603] establishes, at most, two things: (1) that the defendant was guilty of a crime; and (2) that, as a direct result of that crime, the persons or entities to whom the restitution is ultimately payable suffered losses (i) of a kind enumerated in the statute and (ii) at least in the amount stated in the restitution order." *Id.* at 465–66, 769 A.2d at 903.

Pete alleges that the "direct result of the crime" of second degree assault on Ms. Raickle may not include as victims either Patrolman Cheesman or the LGIT because they were not victims of the assault. Section 11–603, he urges, compels that conclusion by stating plainly that restitution may be ordered as "as a direct result of the crime or delinquent act, property of the victim was stolen, damaged, destroyed, converted, or unlawfully obtained, or its value substantially decreased. . . ." Furthermore, he asks us to read the statute's plain language and determine that a direct result of a crime is limited to the victim of the qualifying crime and that victim's injuries and/or damages arising from that crime. In the alternative, he asks that we apply tort proximate cause analysis. Under this analysis, the intervening event of the reckless driving incident occurring approximately two hours after the assault would break the chain of causation between the assault and the motor vehicle collision between Pete's truck and Patrolman Cheesman's cruiser.

The State believes that these assertions, if accepted, would limit too much the scope of § 11–603. It urges us, like the reasoning employed by the intermediate appellate court in this case, to adopt a broader reading of § 11–603 by interpreting the pretextual sentence in paragraph (a) in light of the narrower language of subparagraph (a)(1): "[a] court may enter a

judgment of restitution ... in addition to any other penalty for the commission of *a* crime or delinquent act...." § 11–603(a) (emphasis added). As the State sees it, if it can obtain a conviction for a crime where restitution may be had, but is not ordered, and another conviction of a related crime, then restitution may be ordered to the appropriate victims as an appropriate sentence under the related crime. Such a reading would require solely "a nexus between the defendant's criminal activity and the losses that form the basis for an order of restitution." This nexus is justified by the Court of Special Appeals in its opinion in the present case as allowing restitution orders if the orders are "related to losses that were caused by conduct for which [Pete] had been convicted." The State also described its nexus theory as the "Single Charging Document" Doctrine. Under this "doctrine," any count for which a defendant is convicted under the same charging document would be sufficient to satisfy the statutory "direct result" test.

The standards governing restitution as a direct penalty for the second degree assault conviction in this case require a particular type of crime, a victim, and damages as a *direct result of the crime*. We need not engage in a tort causal relationship analysis,[15] nor weigh the persuasion quotient of an

---

15. The dangers of relying on a type of tort causation analysis are almost too numerous too summarize. We already clearly have stated that restitution is a criminal sanction and not a civil remedy, *Grey*, 363 Md. at 451, 769 A.2d at 895, and that there is a "fundamental and clear separation of criminal and civil liability ..." *Id.* at 467, 769 A.2d at 904. Tort law and criminal law "must be regarded a very unreliable analogy...." *Prosser and Keeton on The Law of Torts*, 9 (W. Page Keeton ed., 5th ed.1984). One need look no further than the commonly accepted definition of proximate cause to see the difficulty in utilizing a tort causation analysis when a "direct result of a crime" is required: "[t]he term, which many suspect is interpreted by jurors to mean 'approximate cause,' is no more than a showing by plaintiff of a *reasonable connection* between his/her injuries and the act or omission by the defendant." Richard J. Gilbert and Paul T. Gilbert, *Maryland Tort Law Handbook*, § 11.7, at 127 (3d ed.2000) (emphasis added). Using a tort causation theory is especially dangerous because tort scholars have described the "art" of determining proximate cause as "[t]here is perhaps nothing in the entire field of law which has called

attenuated nexus between the damages to Patrolman Chees-man's police cruiser and the assault on Ms. Raickle. The General Assembly has required a direct result between the qualifying crime committed and the damages inflicted before restitution may be ordered. Any attempt by a court to craft a proximate causation, mere nexus, or single charging document substitute would be clearly contrary to the plainly-worded intent of § 11–603.

In this case, the collision with, and resultant damage, to Patrolman Cheesman's cruiser are a direct result of Pete's reckless driving, not his assault on Ms. Raickle. The damage to the cruiser is a direct result of Pete stopping abruptly, from a relatively high rate of speed, in the path of the cruiser. Reckless driving, by definition, is driving with a "wanton or willful disregard for the safety of persons or property." § 21–901.1 of the Transportation Article. In this case, Pete's wanton or willful disregard was for the safety of Patrolman Cheesman, his police cruiser, and possibly any other person, vehicle, or property on the same roadway or placed at risk by Pete's driving. It is easy to see on this record that the damage to the police cruiser could not be a direct result of the assault on another individual that occurred approximately two hours earlier than the vehicle collision.

---

forth more disagreement, or upon which the opinions are in such a welter of confusion." William L. Prosser, *The Law of Torts,* 240 (3rd ed.1964). This is especially true when one considers that a crime is a "public wrong" accepted as "being against society generally," regard-less of whether the wrong is against the individual victim or the public. *Gilbert, supra,* at 1. Even with the advent of restitution statutes like § 11–603, the individual victim's role in the consideration of restitution is vastly different where he/she is the accuser and witness on behalf of the State, not the adverse party in a tort claim. *Prosser and Keeton, supra,* at 7. To balance this, criminal prosecutions require a showing by the State of guilt beyond a reasonable doubt while tort claims may succeed on a preponderance of the evidence showing, or a more likely than not, proof. Dan B. Dobbs, *The Law of Torts,* 5 (2000); *also* Alan T. Harland, *Monetary Remedies for the Victims of Crime: Assessing the Role of the Criminal Courts,* 30 U.C.L.A. L.Rev. 52, 87, n. 206 (1982) (noting that criminal liability under restitution is generally less com-plete than civil liability and that neither the full principles nor proce-dures of civil liability damages claims have been adopted for criminal restitution damages).

## C.

We turn to the question of whether restitution as a condition of probation for the second degree assault might be appropriate under § 6–221.

Pete argues that, because restitution to the LGIT would have been impossible as a direct result of either the second degree assault or the reckless driving conviction, the trial court abused its discretion in ordering restitution as a condition of probation. Such a result, he maintains, conflicts with the General Assembly's obvious intent to limit the ordering of restitution to specific persons victimized by specific crimes as evidenced by the language in §§ 11–603 and 11–601. He urges us to resolve this conflict by vacating the condition of probation.[16]

The State simply asks us to agree with the courts below that Pete is responsible for the damages to the police cruiser caused by his reckless driving. It alleges, without reference to any specific support in the record, that the Circuit Court merely added the restitution to the LGIT as a condition of probation for the assault to grant Pete the "opportunity to make the payments over a three-year period." Such a conclusion, it believes, would be harmonious with its belief that restitution to a victim may be ordered as a condition of probation for any loss "from a criminal count for which a defendant was convicted in the same criminal case." Under the State's analysis of including the broader language of § 11–603(a), the LGIT is a victim of "a" crime for which Pete was convicted under Case No. 11332, and because the second degree assault conviction occurred under Case No. 11332, restitution as a condition for probation is appropriate.

---

16. Pete also alleges that such a result would align Maryland with other jurisdictions that hold similarly, an argument which the State claims to be able to distinguish. Because we resolve this case based on an analysis of Maryland's statutory language, we need not look to other jurisdictions that may base their restitution and probation statutes on different jurisprudential, economic, or societal theories.

Our analysis under § 6–221 begins with consideration of the scope of the trial court's power to order probation. The relevant portion of § 6–221 provides a trial court broad discretion to suspend the enforcement of a sentence (or portion thereof), following a conviction, and order probation with such conditions as "the court considers proper." [17] We, have vacated, on occasion, ordered conditions of probation on the grounds that they were an illegal sentence or otherwise improper. *See Sheppard,* 344 Md. at 154, 685 A.2d at 1181 (holding that a trial court improperly conditioned probation on the defendant not being able to drive where the Transportation Article enabled the Maryland Transit Authority to regulate the suspension of drivers); *Walczak,* 302 Md. at 433, 488 A.2d at 954 (holding that probation order conditioned on restitution for a crime for which the defendant was not convicted violated the "direct result of the crime" provisions of the restitution statute under § 641A).

In contrast, we affirmed a probation order with a condition of restitution in *Coles v. State,* 290 Md. 296, 429 A.2d 1029 (1981). In *Coles,* the defendant was convicted of violating § 62(a) of Article 88A, making false or fraudulent statements in applications for public assistance benefits. *Id.* at 298, 429 A.2d at 1030. He was subsequently sentenced to serve seven, concurrent ten year sentences that were suspended in lieu of probation under § 641A. He appealed, challenging his probation order that was conditioned on monthly restitution pay-

---

17. Section 6–221 states, "[o]n entering a judgment of conviction, the court may suspend the imposition or execution of sentence and place the defendant on probation on the conditions that the court considers proper." Its ancestor, House Bill 551, was approved on 28 April 1970 and codified as § 641A of Article 27. While the text has undergone revision and re-ordering since its original enactment, the current statute preserves much of the original language, save a few clarifying provisions; "[u]pon entering a judgment of conviction, the court having jurisdiction, may suspend the imposition or execution of sentence and place the defendant on probation upon such terms and conditions as the courts deem proper." 1970 Md. Laws, Ch. 480; *see, e.g.,* § 6–221 (Revisor's Note explaining that " 'terms' is deleted in light of the reference to 'conditions.' "); 1981 Md. Laws, Ch. 398 (changing original language from *"courts deem* proper" to *"court deems* proper" as clarifying language).

ments of $200, with full restitution due within one year, because the restitution statute, then § 640, did not include Article 88A convictions as crimes for which restitution could be ordered as a direct penalty. Because the General Assembly, Coles argued, did not allow restitution as a direct penalty for his convictions, the trial court's order was an illegal sentence because it ordered probation conditioned upon his paying full restitution. *Id.* at 303–304, 429 A.2d at 1032–33. We disagreed with this argument and held that § 641A "generally authorizes the type of action taken by [the trial judge] . . .," and, "may include an order to pay restitution, whether entered for the purpose of furthering rehabilitation of the defendant or otherwise." *Id.* at 305, 429 A.2d at 1033 (citations omitted).

Four years after *Coles,* we curtailed somewhat a trial court's broad discretion to order conditions for probation based on our further interpretation of the probation and restitution statutes. *Walczak,* 302 Md. at 427–33, 488 A.2d at 951–54. In *Walczak,* the defendant was charged with multiple counts of assault, robbery, and robbery with a dangerous weapon, for his conduct in robbing two victims at gunpoint in their residence. *Id.* at 424, 488 A.2d at 949–50. Walczak entered an agreement with the State to be tried solely for robbery with a dangerous weapon for one of the victims. *Id.* at 424, 488 A.2d at 950. After his conviction at a bench trial, the State nol prossed the remaining charges. *Id.* At sentencing, the trial court ordered, as a condition of probation for a suspended sentence, that Walczak make restitution to both victims. *Id.* Walczak appealed, claiming that restitution could not be ordered properly under § 641A regarding a person who, although the victim of "a" crime, was not "the" victim of the crime for which the defendant was convicted.

We agreed with Walczak and held that both § 641A and the restitution statute granted "a court the authority to order the payment of restitution only upon a 'conviction.'" *Id.* at 430, 488 A.2d at 953. We explained that *Coles* held that § 641A "vested additional power in the trial court beyond that conferred by § 640, to suspend Coles's sentence and impose

conditions of probation." *Id.* At the same time, that additional power was limited by the plain statutory language of §§ 640 and 641A. As a result, we held that Walczak's probation order was illegal and remanded to the Circuit Court to remove the offending probation condition.

While neither *Walczak* nor *Coles,* on their factual predicates, offer a dispositive solution for Pete, the probation orders dealt with in those cases, and their respective conditions, were measured by a common metric whether the result of the conditions of the probation order granted under the broad powers of § 6–221 could be read consistently with concurrent legislation addressing the same subject matter. Underlying *Walczak, Coles,* and, more importantly, this case, is the requirement under § 11–603 that a legal restitution order address the victim of the crime for which probation could be ordered. A probation order for a criminal conviction conditioned on restitution must meet the minimum requirements of: (1) a victim with property damage of the type enumerated in § 11–603, and (2) the damage to the victim be the direct result of the crime for which the defendant was convicted and for which it was directed.

Such a conclusion is consistent with our interpreting a statute in "full awareness" of related statutes. *State v. Bricker,* 321 Md. 86, 93, 581 A.2d 9, 12 (1990) (citations omitted). Our harmonizing of the trial court's powers under § 6–221 and § 11–603 is a constant tenet of statutory interpretation: "[t]herefore various consistent and related enactments, although made at different times and without reference to one another, nevertheless should be harmonized as much as possible." *Id.* at 93, 581 A.2d at 12 (citations omitted). After all, "it is presumed that the General Assembly acted with full knowledge of prior legislation and intended statutes that affect the same subject matter to blend into a consistent and harmonious body of law." *Id.* at 93, 581 A.2d at 12 (citations omitted). As a result, "statutes on the same subject are to be read together and harmonized to the extent possible, reading them so as to avoid rendering either of them, or 'any portion,

meaningless, surplusage, superfluous or nugatory.' " *Whiting–Turner Contracting Co. v. Fitzpatrick,* 366 Md. 295, 303, 783 A.2d 667, 671 (2001) (quoting *Gov't Employees Ins. Co. v. Ins. Comm'r,* 332 Md. 124, 132, 630 A.2d 713, 717 (1993)).

In this case, we conclude that it was improper to order restitution as a condition for probation for the second degree assault conviction. As previously explained, the General Assembly crafted explicit statutory requirements allowing restitution under limited circumstances. It is quite clear that restitution to the LGIT was unavailable under § 11–603 for either the second degree assault or the reckless driving conviction. Whether the trial judge's action was well-intended (as the State asserts) in allowing Pete three years to make restitution or intended merely to clarify an earlier mistaken utterance (as evidenced in the transcript of the sentencing proceeding), is of no matter; it was improper for the court to order restitution as a condition of probation for the second degree assault conviction when Patrolman Cheesman and the police cruiser were neither the victim of the second degree assault nor were damaged as a direct result of that crime.[18]

---

**18.** As noted earlier, probation could have been ordered for the reckless driving conviction. *Supra,* note 13. If probation, with a condition of restitution, had been ordered for the reckless driving conviction under § 6–221, however, the condition may have conflicted with the statutory definition of "crime" under § 11–601(d)(2) and also produced an unharmonious result in light of § 11–603. Pete suggested at oral argument that probation conditioned on restitution should be controlled by the definition of "judgment of restitution" in § 11–601(g). This term is used in § 11–603 to define a trial court's power to order restitution. As the probation ordered here was clearly not for the reckless driving conviction, nor has Pete properly briefed this argument, the issue is not squarely before us and we decline Pete's invitation to 1) rule on the legality of probation with a condition of restitution for a reckless driving charge and 2) reverse *Coles* in light of § 11–601(g). Lastly, we note that, if a challenge to a probation order conditioned on restitution were to occur in the future based on § 11–601(g) and the term "judgment of restitution," it would have to overcome legislative history suggesting that the General Assembly did not specifically intend to circumscribe, by this statutory definition, a court's probation power under § 6–221. 1992 Md. Laws, Chap. 236 (S.B.221); *see* Floor Report S.B. 221, Senate Judicial Proceedings Committee (stating that S.B. 221 provides that "an order to pay restitution which is included as a

JUDGMENT OF COURT OF SPECIAL APPEALS AF-
FIRMING RESTITUTION ORDERED AS CONDITION
OF PROBATION AS TO COUNT 1 IN CASE NO. 11332
REVERSED IN THAT REGARD; CASE REMANDED TO
THAT COURT WITH INSTRUCTIONS TO VACATE
THAT PART OF THE CONDITION OF PROBATION
THAT REQUIRES PETITIONER TO PAY $6,490.53 IN
RESTITUTION TO THE LOCAL GOVERNMENT INSUR-
ANCE TRUST; COSTS IN THIS COURT AND IN COURT
OF SPECIAL APPEALS TO BE PAID BY DORCHESTER
COUNTY.

---

condition of probation in document that is entitled 'order of probation'
must be recorded and indexed in the same fashion as a separate order
of the court for the payment of restitution" and that it "also clarifies
that an obligation to pay restitution which is included as a condition of
probation will survive the termination of the probation order.").