881 A.2d 1148

**Todd Lin CHOW**

v.

**STATE of Maryland.**

**No. 2366, Sept. Term, 2003.**

Court of Special Appeals of Maryland.

June 2, 2005.

Reconsideration Denied Oct. 4, 2005.

494

David M. Simpson, Michael Wein, Greenbelt, for Appellant.

Annabelle L. Lisic (Joseph J. Curran, Jr., Atty. Gen., on the brief), Baltimore, for Appellee.

Panel: DAVIS, BARBERA, THEODORE G. BLOOM (Retired, specially assigned), JJ.

BARBERA, Judge.

This appeal requires us to consider the scope of conduct the General Assembly sought to prohibit by its enactment of

Maryland Code (1957, 1996 Repl. Vol., 2002 Supp.), Art. 27, § 442(d). This subsection makes it unlawful for a person, who is not a regulated gun dealer, to "sell, rent, transfer, or purchase any regulated firearm" until seven days after submission by the prospective purchaser or transferee of an application to purchase or transfer the firearm. We are asked to decide in particular whether the verb "transfer," as it is used in this subsection, includes a temporary exchange—a loan—of a firearm by its owner to another person. For the reasons we shall explain, we hold that it does.

## I.

The statutory provisions at issue in this case are found within then Article 27, §§ 441 et seq. of the Maryland Code, the "Regulated Firearms" subheading. Specifically at issue are §§ 442(d) and 449(f) of the subheading.[1] Section 442(d) provides:

> *Sale by other than regulated firearms dealer.*—(1) A person who is not a regulated firearms dealer may not sell, rent, *transfer,* or purchase any regulated firearm until after 7 days shall have elapsed from the time an application to purchase or transfer shall have been executed by the prospective purchaser or transferee, in triplicate, and the original copy is forwarded by a regulated firearms dealer to the Secretary.

(Emphasis added.)

Section 449(f) establishes the penalty for violation of § 442(d) and provides:

---

1. Effective October 1, 2003, the Regulated Firearms subheading was repealed and re-enacted, without substantive change, as Maryland Code (2003), §§ 5–101 et seq., of the Public Safety Article. Section 442(d) is now found at § 5–124 of the Public Safety Article, and § 449(f) and is now found at § 5–143 of that Article.

 The events at issue in this case occurred in April 2003, so we shall refer to the version of the statute in effect at the time, Md.Code (2002), §§ 441 et. seq. of Article 27. Unless otherwise indicated, all statutory references herein are to this version of the Code.

*Knowing participants in sale, rental, etc.*—Except as otherwise provided in this section, any dealer or person who knowingly participates in the illegal sale, rental, transfer, purchase, possession, or receipt of a regulated firearm in violation of this subheading shall be guilty of a misdemeanor and upon conviction shall be fined not more than $10,000 or imprisoned for not more that 5 years, or both. . . .

Appellant, Todd Lin Chow, a District of Columbia Metropolitan Police Department officer, was tried at a court trial in the Circuit Court for Prince George's County, on charges that he violated § 442(d) for having transferred a gun he owned by lending it to a friend. Over appellant's objection that § 442(d) does not proscribe this conduct because it does not come within the meaning of the term "transfer," the court found him guilty.

Appellant's friend, Man Nguyen, was the State's main witness at trial. Nguyen testified that, while driving his car on April 1, 2003, he was stopped by the Prince George's County Police Department for a broken taillight. At that time, the police searched Nguyen's vehicle, and discovered a Glock semi-automatic pistol (not the weapon that is the subject of this appeal). The pistol was properly registered in Nguyen's name, but he did not have a permit to carry it. The police confiscated it in connection with their investigation of a recent murder of one of Nguyen's friends.

The following day, Nguyen contacted appellant. Nguyen explained to appellant that this gun and other guns at his home had been confiscated by the police, and he was "anxious" to buy another gun. He told appellant that he needed to purchase a gun for protection, by which he meant "[h]ome security," "[s]o, [appellant] offered me his gun."

The two men arranged to meet later that day for lunch at a restaurant in Bowie, Maryland. Sometime during this meeting, appellant gave Nguyen a nine millimeter, semi-automatic handgun that he had owned since 1996.

Nguyen told appellant that he wanted to test fire the weapon before purchasing it. The pair got into Nguyen's

vehicle and headed to a firing range in Upper Marlboro. En route, Nguyen received a business call on his cellular telephone, requiring that he abort the trip to the firing range.[2] Nguyen drove appellant back to the restaurant where appellant's car was parked and dropped him off. Appellant's weapon remained in Nguyen's car. No money was exchanged between Nguyen and appellant.

Soon thereafter, Nguyen contacted appellant by telephone. Nguyen testified: "I was interested in buying it and I called him, and, you know, I told him I'd give it back to him but he said, that's cool, just keep it in the house and he'll pick it up." Nguyen further testified that he anticipated the weapon would be returned to appellant "as soon as possible."

Detective Donnie Judd testified as a State's witness. He reported that, on April 4, 2003, he and other members of the Prince George's County Police Department stopped Nguyen on a warrant to arrest him for having illegally carried the gun that was found in his car three days earlier. In the ensuing search of Nguyen's car, the police discovered appellant's loaded handgun in the car's center console. Detective Judd ran an NCIC[3] check and determined that the handgun had not been reported stolen. The gun was test fired and determined to be operable.

Nguyen was arrested and taken to the police station, where he gave a four-page statement. The first paragraph of the statement addressed how he had obtained appellant's handgun, and that portion of the statement was admitted into evidence. It varied from Nguyen's trial testimony. Nguyen wrote:

> I know [sic] [appellant] for 2–3 [years]. I was detain [sic] on 4-1-03 and PGPD took all my guns. Next [d]ay, I called

---

2. The telephone call Nguyen received related to his "strip-o-gram" business, which supplies dancers for private parties and shows.

3. The acronym "NCIC" stands for the National Crime Information Center. Managed by the FBI, this nationwide system provides information to federal, state and local criminal justice agencies.

[appellant] and asked him *if I could hold on to his gun until I can get my guns back in a week or two because I felt uncomfortable without a gun[.]* We then met at Olive Garden att [sic] 4pm in Bowie and had lunch and after that he give [sic] me his 9mm, out of a bag in the front Passengers [sic] seat[.]

Sergeant William Szimanski, of the State Police Licensing Division, Firearms Registration Section, performs background checks on persons purchasing regulated firearms in Maryland and deals with records concerning firearms purchases. He testified that the records related to appellant's handgun reflect that appellant bought the handgun in November 1996, and it was formally transferred to him on the 27th of that month, after completion of the weapon registration process. The records show no subsequent transfer of the handgun, and no application for a transfer of the gun from appellant to Nguyen.

Sergeant Guillermo Rivera, of the Office of Internal Affairs of the District of Columbia Metropolitan Police Department, also testified. He stated that appellant had not filed a stolen weapon report between November 17, 2001 and November 17, 2003.

At the close of the State's case, appellant made a motion for judgment of acquittal. Appellant argued that § 442(d) does not cover his conduct, which was simply a temporary exchange of the handgun. In the alternative, appellant argued that he did not "knowingly" violate the statute, as required by § 449(f), because the State did not prove that he knew the transferee, Nguyen, had not filed the application required by § 442(d).

The State countered that appellant's leaving the gun with Nguyen was a "transfer" of it, and therefore was covered by § 442(d). The State further argued that appellant was aware of the requirements for transferring a handgun, because he had fulfilled those requirements himself when he purchased the gun in 1996. The State finally argued that the "plain meaning" of transfer does not necessarily include the conveyance of title, and encompasses a mere loan.

After hearing from counsel on both issues, the court denied the motion. Appellant then rested without putting on any evidence, and the court issued its ruling:

The Court having reviewed the statute and now the burden is on the State to prove beyond a reasonable doubt, the Court finds based upon the testimony of the State's witnesses that there was in fact a transfer in this case.

The Court also finds that based upon the facts that it was a temporary transfer.

It is the Court's assessment of the testimony of the State's witness that it was in fact a loan, although he has testified to two totally opposite things; he testified that it was in fact an anticipated purchase, and on the other hand, there was testimony or at least—yeah, there was testimony that it was in fact a loan. So, we have two inconsistent statements by the State's witness.

And the State asks the Court or states to the Court— argues to the Court that under either theory, that there was an illegal transfer in this case. The Court agrees that there was an illegal transfer.

The court then found appellant guilty of the charge and proceeded immediately to sentencing. The court imposed a $200.00 fine and a 60–day suspended sentence. On appeal, appellant challenges the court's interpretation of § 442(d) and its finding that he "knowingly" violated it.

## II.

 Appellant's first question is a purely legal one: What is meant by the word "transfer" in the phrase in § 442(d) that makes it unlawful for a person to "sell, rent, transfer or purchase" a regulated firearm without there first being compliance with the required application process? Appellant takes the position that the term does not contemplate a loan of a regulated firearm. Without directly stating what he believes the term means, he seems to argue that "transfer" must mean "gift," i.e., something that is not a sale or rental, and also is not a loan. The State disagrees, arguing that, by its

plain terms, § 442(d) prohibits *all* exchanges of regulated firearms: sales, rentals, and other transfers that are made without consideration, including both gifts and loans.

In deciding which position is correct, we must engage in statutory construction, the chief goal of which is to ascertain the actual intent of the Legislature when it enacted the statute. *See, e.g., Pete v. State,* 384 Md. 47, 57, 862 A.2d 419 (2004). We begin our analysis by examining the plain language of the statute. *Hackley v. State,* 161 Md.App. 1, 11, 866 A.2d 906 (2005). "In fact, all statutory interpretation begins, and usually ends, with the statutory text itself, for the legislative intent of a statute primarily reveals itself through the statute's very words." *Price v. State,* 378 Md. 378, 387, 835 A.2d 1221 (2003) (citations omitted). " 'We view the words of a statute in ordinary terms, in their natural meaning, in the manner in which they are most commonly understood.' " *Hackley,* 161 Md.App. at 11, 866 A.2d 906 (quoting *Gillespie v. State,* 370 Md. 219, 222, 804 A.2d 426 (2002)). And we are cautioned not to add or delete language in a way that reflects an intent not reflected by the plain and unambiguous language of the statute. *Price,* 378 Md. at 387, 835 A.2d 1221. "[N]or may [we] construe the statute with forced or subtle interpretations that limit or extend its application." *Id.* " 'If the words of a statute are clear and unambiguous, our inquiry ordinarily ends and we need investigate no further, but simply apply the statute as it reads.' " *Hackley,* 161 Md.App. at 11, 866 A.2d 906 (quoting *Gillespie,* 370 Md. at 222, 804 A.2d 426).

Only when the statutory text is ambiguous do we resort to the rules of statutory construction. The Court of Appeals reemphasized this as recently as several months ago, in *Pete:*

"In some cases, the statutory text reveals ambiguity, and then the job of this Court is to resolve that ambiguity in light of the legislative intent, using all the resources and tools of statutory construction at our disposal. However, before judges may look to other sources for interpretation, first there must exist an ambiguity within the statute, i.e., two or more reasonable alternative interpretations of the

statute. Where the statutory language is free from such ambiguity, courts will neither look beyond the words of the statute itself to determine legislative intent nor add to or delete words from the statute. Only when faced with ambiguity will courts consider both the literal or unusual meaning of the words as well as their meaning in light of the objectives and purposes of the enactment."

384 Md. at 58, 862 A.2d 419 (quoting *Price*, 378 Md. at 387–88, 835 A.2d 1221 (citations omitted)).

■ We bear these principles in mind as we turn to the statutory provision at issue in this case. As we have mentioned, § 442 is part of the "Regulated Firearms" subheading of Article 27. Neither § 442 nor any other section within that subheading defines the word "transfer." Nonetheless, "[o]rdinary and popular understanding of the English language dictates interpretation of terminology within legislation." *Deville v. State*, 383 Md. 217, 223, 858 A.2d 484 (2004). Consequently, "[w]e may consult a dictionary to discern the generally understood meaning of a word." *Hackley*, 161 Md.App. at 14, 866 A.2d 906.

The first definition of the verb "transfer" in The Random House Dictionary of the English Language is "to convey or remove from one place, person, etc., to another[.]" THE RANDOM HOUSE DICTIONARY OF THE ENGLISH LANGUAGE, Unabridged 2009 (2nd ed. 1987) ("Random House"). A similar first definition of the verb "transfer" is found in Black's Law Dictionary: "To convey or remove from one place or one person to another; to pass or hand over from one to another, esp. to change over the possession or control of." BLACK'S LAW DICTIONARY 1536 (8th ed. 2004) ("Black's"). These definitions are broad and both include a loan of the property at issue.

To be sure, other subsequently listed dictionary definitions of the verb "transfer" are more in keeping with the construction given to it by appellant. Random House includes as the third definition of the verb: "*Law.* to make over the possession or control of: *to transfer a title to land.*" RANDOM HOUSE,

*supra,* at 2009. And Black's lists, as its second definition, "To sell or give." BLACK'S, *supra,* at 1536. Similarly, Random House defines the noun form of the word "transfer" as, *inter alia,* "*Law.* a conveyance, by sale, gift, or otherwise, of real or personal property, to another." RANDOM HOUSE, *supra,* at 2009. And "conveyance" is defined, *inter alia,* as "*Law.* **a.** the transfer of property from one person to another." *Id.* at 445.

We nevertheless decline appellant's invitation to ascribe to the verb "transfer," in § 442(d), a definition suggestive only of a permanent exchange of title or possession. There are several reasons why such a definition is inappropriate. First, it would run afoul of the rule that "[o]rdinary and popular understanding of the English language dictates interpretation of terminology within legislation." *Deville,* 383 Md. at 223, 858 A.2d 484.

Second, the context in which "transfer" appears does not comport with the narrow definition appellant would have us give the word. Section 442(d) refers to three forms of firearm exchange: "sell [or purchase]", "rent," and "transfer." "Rent" is defined in § 441(t) as the "temporary transfer of a regulated firearm for consideration where the firearm is taken from the firearm owner's property." "Sell" and "purchase" are not defined in the subheading, but we assume they carry their ordinary and popular meaning, and contemplate a permanent transfer for consideration.

"Transfer," then, must contemplate something different from "sell" or "rent"; otherwise, those terms would be surplusage. We strive to "read statutes 'so that no word, clause, sentence or phrase is rendered surplusage, superfluous, meaningless, or nugatory.'" *See State v. Pagano,* 341 Md. 129, 134, 669 A.2d 1339 (1996) (quoting *Montgomery County v. Buckman,* 333 Md. 516, 524, 636 A.2d 448 (1994)).

Third, in context, "transfer" cannot simply mean "gift." Elsewhere in § 442 itself, the General Assembly used "gift" to exclude (with certain conditions) those forms of exchange from the prohibitions against straw purchases. *See* § 442(b)(2), (3) (providing that "[t]he prohibitions of this [straw purchase]

subsection do not apply to a person purchasing a regulated firearm as a gift," so long as there is compliance with the application requirement). Had the General Assembly intended to limit its meaning of the verb "transfer" in § 442(d) to making a gift, we expect that the Legislature would have used that word.

If transferring a regulated firearm is not limited to making a gift of the regulated firearm, as we have concluded it cannot be, then "transfer" has a broader meaning that includes (even if not limited to) both the permanent exchange of title of the property without consideration (gift), and the temporary exchange of possession without consideration (loan). That "transfer" includes, at the least, both gifts and loans is bolstered by the General Assembly's reference to "temporary transfer" elsewhere in the firearms subheading. We have noted that rent is defined, in § 441(t), as a form of "temporary transfer." The same phrase is repeated in § 445(e)(2)(i), (iv). Those subsections permit the "temporary transfer" of firearms in certain circumstances to persons under 21 years of age. It can be inferred from the General Assembly's use of the term "temporary transfer" in the subheading that "transfer," without its modifier of "temporary," includes both temporary and permanent transfers.

It is also telling that the General Assembly repeated the word "transfer," in either its verb or noun form, elsewhere in § 442 itself and throughout the subheading, in a manner suggesting that the Legislature intended the word to be interpreted broadly. *See, e.g.,* § 442(b)(3) (referring in general terms to "purchase or transfer a regulated firearm"); § 442(d)(2) (referring to the "prospective seller or transferor" of a regulated firearm); § 445(a) (providing that all restrictions imposed by local laws on "possession or transfers by private parties of regulated firearms are superseded"); § 445(e)(2)(ii) (permitting "[t]he transfer [to a minor] by inheritance of title"). In light of this, we cannot ascribe to the term, as it is used in § 442(d), a narrow meaning restricted essentially to "gift," without contravening the tenet that the

Legislature is presumed to have " 'intended statutes that affect the same subject matter to blend into a consistent and harmonious body of law.' " *Pete*, 384 Md. at 65, 862 A.2d 419 (quoting *State v. Bricker*, 321 Md. 86, 93, 581 A.2d 9 (1990)).

Appellant declares that, if the General Assembly wanted to include loans in the proscriptions of § 442(d), it knew how to do so. He directs us to the section of the law requiring that every machine gun manufacturer keep a register of all machine guns manufactured or handled by him, including the "date of manufacture, sale, *loan*, gift, delivery, and receipt[.]" [4] Md.Code (2002), § 4-403(a)(2)(ii) of the Criminal Law Article (emphasis added).

The General Assembly, for reasons not evident from the legislative history of the Regulated Firearms subheading, has never used the word "loan" to describe firearm exchanges that come within the regulatory purview of that subheading. It does not follow, however, that "transfer" in § 442(d) excludes a loan simply because the General Assembly has chosen to use one term in connection with machine guns, and another in connection with regulated firearms.[5]

---

**4.** This law has been on the books since 1933. That year, the General Assembly enacted the Uniform Machine Gun Act, which added, *inter alia*, Maryland Code, Article 27, § 350G.1933 Md. Laws ch. 550; Md.Code (1931, 1935 Supp.), Article 27, § 350G. That section, without substantive change, remains in effect and continues to use the term "loan." *See* Md.Code (2002), § 4-403 of the Criminal Law Article.

**5.** We have traced the regulated firearms statute back to its origins, and have found that the General Assembly never used the words "loan" or "lend" in the statute, and consistently used the word "transfer." The General Assembly first regulated the sale of pistols and revolvers in 1941, providing: "A true record shall be made by each dealer ... of all pistols or revolvers sold, *transferred* or otherwise disposed of at wholesale or retail[.]" 1941 Md. Laws, ch. 622 (emphasis added); Md.Code (1939, 1943 Supp.), Article 27, §§ 531B, 531C.

In 1957, that language was re-codified at Article 27, § 442, without substantive change. *See* Md.Code (1957), Article 27, § 442. *See generally* 1957 Md. Laws, ch. 23 ("legalizing" the 1957 edition of the Maryland Code).

In 1966, § 442 was repealed, and re-enacted, with substantial amendments, to change the structure and requirements of the section. 1966 Md. Laws, ch. 502. It was then that the section first resembled the

To accept appellant's proposed construction would mean that all regulated firearms could be freely lent by an owner to another person without complying with the strictures of regulation, but machine guns cannot. Indeed, a construction of § 442(d) that does not include the loan of a regulated firearm could result in a complete end-run around the statute. The General Assembly could not have intended such an absurd result.

We conclude that attributing to the verb "transfer" its ordinary meaning and reading the word in context makes plain the intent of § 442(d). The statute prohibits, among other forms of transfer, a loan of a regulated firearm without there first being compliance with the statute's requirement of an application and seven-day waiting period.

Finally, we understand that the rules of construction come into play only when a statute or portion of it is ambiguous. *See Price,* 378 Md. at 388, 835 A.2d 1221. Yet, even when it is determined, as it has been here, that a statute is plain, we sometimes, "[i]n the interest of completeness," examine "the purpose of the statute and compare the result obtained by use of its plain language with that which results when the purpose of the statute is taken into account." *Hackley,* 161 Md.App. at 11, 866 A.2d 906 (*quoting Harris v. State,* 331 Md. 137, 146, 626 A.2d 946 (1993)); *accord Chilcoat v.*

---

version of § 442 in effect in 2003. *Compare* Md. Code (1957, 1967 Repl. Vol.), Article 27, § 442, *with* Md.Code (1957, 1996 Repl. Vol, 2002 Supp.), Article 27, § 442. The General Assembly continued to use the term "transfer": "(b) *Application to purchase or transfer.*—No dealer shall sell or *transfer* any pistol or revolver until after seven days shall have elapsed from the time an application to purchase or transfer shall have been executed by the prospective purchaser or transferee...." Md. Code (1957, 1967 Repl. Vol.), Article 27, § 442 (emphasis added).

As we discuss, *infra,* the language contained in the subsection at issue in this case— § 442(d)—was not added until 1996, as part of the Maryland Gun Violence Act. 1996 Md. Laws, chs. 561, 562. The General Assembly used "transfer" in § 442(d), just as it had been doing in reference to firearms transactions through dealers. *See* Md. Code (1957, 1992 Repl. Vol., 1995 Supp.), Article 27, § 442. Despite amendments to other portions of § 442 between 1996 and 2002, section (d) has remained unchanged.

*State,* 155 Md.App. 394, 405, 843 A.2d 240, *cert. denied,* 381 Md. 675, 851 A.2d 594 (2004). Our review of the legislative history of § 442(d) confirms our construction of it.

Subsections (d) and (b) (the latter, proscribing, with certain exceptions, straw purchases) were added to § 442 in 1996. These additions to the law regulating the sale or transfer of firearms were a feature of the "Maryland Gun Violence Act of 1996" ("Act"), cross-filed as Senate Bill 215 and House Bill 297. These bills were "Administration" bills, proposed by Governor Parris N. Glendening as "a comprehensive proposal aimed at reducing the epidemic of gun violence" in Maryland. BRIEFING STATEMENT BEFORE THE SENATE JUDICIAL PROCEEDING COMMITTEE AND THE HOUSE JUDICIARY COMMITTEE (1996) (statement of Bonnie A. Kirkland, Chief Legislative Officer, Governor's Legislative Office, and Colonel David B. Mitchell, Superintendent of State Police), at 2 ("Briefing Statement"). The Briefing Statement explains: "To help accomplish this goal, the Maryland Gun Violence Act focuses on reducing the availability of handguns and assault weapons, which are defined in the bill as regulated firearms, to prohibited persons by diminishing the proliferation of illegal sales and transfers of firearms." *Id.*; *see also Valentine v. On Target, Inc.,* 353 Md. 544, 564, 727 A.2d 947 (1999) (Raker, J., concurring) (recognizing that the regulated firearms provisions are part of an "elaborate statutory scheme[ ] designed to regulate the transfer of handguns[,]" which, like the Omnibus Crime Control and Safe Streets Act passed by Congress in 1968, has the purpose of "control[ling] and, if possible, eliminat[ing] gun violence").

Maryland's legislative scheme restricts possession of regulated firearms to persons who meet certain qualifications. The application that must be filed before taking possession of a regulated firearm includes, for example, a sworn statement by the applicant that he has never been convicted of a crime of violence, a felony, or certain misdemeanors.[6] *See*

---

6. Section 442(h) then read, in pertinent part:

§ 442(h)(2)(i). Further, a regulated firearm cannot be transferred until seven days have elapsed from the filing of the application, presumably to allow time for the necessary "background check." *See* § 442(d), (i).

Section 442(d) in particular has the purpose of "disrupt[ing] established gun trafficking patterns by reducing the supply of regulated firearms to the illegal market." BRIEFING STATEMENT, at 5. To read § 442(d) as exempting the loan of a regulated firearm would undermine the laudable purpose of

---

Note 6—Continued

(h) *Contents of application.*—The application to purchase, rent, or transfer shall contain the following information:

\* \* \*

(2) A statement by the applicant under the penalty of perjury that he or she:

(i) Has never been convicted of:

1. A crime of violence;

2. Any violation classified as a felony in this State;

3. Any violation classified as a misdemeanor in this State that carries a statutory penalty of more than 2 years; or

4. Any violation classified as a common law offense where the person received a term of imprisonment of more than 2 years.

(ii) Is not a fugitive from justice.

(iii) Is not a habitual drunkard.

(iv) Is not an addict or habitual user of any controlled dangerous substances.

(v) Has never spent more than 30 consecutive days in any medical institution for treatment of a mental disorder or disorders, unless there is attached to the application a physician's certificate, issued within 30 days prior to the date of application, certifying that the applicant is capable of possessing a regulated firearm without undue danger to himself or herself, or to others.

(vi) Is at least 21 years of age.

(vii) Is not a respondent against whom a current non ex parte civil protective order has been entered under § 4–506 of the Family Law Article.

(viii) Is less than 30 years of age at the time of application and has not been adjudicated delinquent by a juvenile court for:

1. A crime of violence;

2. Any violation classified as a felony in this State; or

3. Any violation classified as a misdemeanor in this State that carries a statutory penalty of more than 2 years; and

(ix) Subject to subsection (h–1) of this section, for an application made on or after January 1, 2002 has completed a certified firearms safety training course conducted free of charge by the Maryland Police Training Commission or that meets standards established by

the legislative scheme. One cannot imagine that the General Assembly intended the unrestricted shifting of possession of a regulated firearm from one who lawfully possesses it to one who might not satisfy the requirements for gun possession laid out in § 442(h).

We also consider the nature of § 442(d) itself. The section is penal in the sense that a significant maximum penalty, of five years' imprisonment and a $10,000.00 fine, is prescribed for one who is convicted of "knowingly participating" in its violation. *See* Md. Code (1957, 1996 Repl. Vol., 2002 Supp.), Art. 27, § 449(f); *see also Reisch v. State,* 107 Md.App. 464, 478–79, 668 A.2d 970 (1995) (explaining that a significant penalty is indication that a statute is penal, even though it may also have remedial features), *cert. denied,* 342 Md. 332, 675 A.2d 993 (1996). Yet, insofar as concerns the conduct that the General Assembly sought to regulate—the possession of a regulated firearm without the requisite permit—the statute is also remedial. *See Reisch,* 107 Md.App. at 478–79, 668 A.2d 970.

To serve its remedial purpose of "reducing the supply of regulated firearms to the illegal market," BRIEFING STATEMENT, at 5, the terms of § 442(d) should be given a broad construction. *See Shade v. State,* 306 Md. 372, 379, 509 A.2d 664 (1986) (stating that the remedial portions of a statute may be construed liberally, even though "the penal provisions must be strictly construed in favor of the accused"). Broadly construed, the verb "transfer" is not limited to "making a gift" but includes "lend."

For all of these reasons, we hold that plainly included within the meaning of "transfer" of a regulated firearm, in § 442(d), is lending a firearm. The plain construction of the term is confirmed by an examination of the general purpose of the regulated firearms, and by the rule that the remedial portions of a statute are to be liberally construed. Therefore, a person

Note 6—Continued
the Maryland Police Training Commission as provided in Article 41, § 4–201(d–1) of the Code.

violates § 442(d) by lending a regulated firearm to another person without there first being compliance with the application process and seven-day waiting period set forth in that section.[7]

### III.

Appellant next argues that the evidence presented by the State failed to establish that he possessed the requisite *mens rea* for a finding of guilty on the charge that he violated § 442(d). We disagree.

When reviewing a conviction resulting from a court trial, we "will not set aside the judgment of the trial court on the evidence unless clearly erroneous, and will give due regard to the opportunity of the trial court to judge the credibility of the witnesses." Maryland Rule 8–131(c); *accord Taylor v. State,* 346 Md. 452, 457, 697 A.2d 462 (1997); *Bryant v. State,* 142 Md.App. 604, 622, 791 A.2d 161, *cert. denied,* 369 Md. 179, 798 A.2d 552 (2002). There is sufficient evidence to sustain a conviction if, " 'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *Taylor,* 346 Md. at 457, 697 A.2d 462 (quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). "Furthermore, '[w]eighing the credibility of witnesses and resolving any conflicts in the evidence are tasks proper for the fact finder.' " *Whiting v. State,* 160 Md.App. 285, 305, 863 A.2d 1017 (2004) (quoting *State v. Stanley,* 351 Md. 733, 750, 720 A.2d 323 (1998)). "[C]ircumstantial evidence alone is sufficient to support a conviction, provided the circumstances support rational inferences from which the trier of fact could be convinced beyond a reasonable doubt of the guilt of the accused." *Painter v. State,* 157

---

7. We need not decide in this case what other facts would support a transfer, for purposes of § 442(d). It is therefore unnecessary to address the scenario postulated by appellant, i.e., a mere momentary exchange of a regulated firearm between the lawful possessor and another person.

Md.App. 1, 11, 848 A.2d 692 (2004) (citations and internal quotation marks omitted).

█ It is well settled that crimes generally require a particular "*actus reus*[,] or guilty act[,]" and a particular "*mens rea*[,] . . . or mental state accompanying a forbidden act." *Garnett v. State,* 332 Md. 571, 578, 632 A.2d 797 (1993). The *mens rea* that is required for conviction under § 442(d) is provided in § 449(f), which makes it a misdemeanor, punishable by a fine of not more than $10,000.00, imprisonment of not more than five years, or both, to "*knowingly* participate[ ] in the illegal sale, rental, transfer, purchase, possession, or receipt of a regulated firearm in violation of this subheading." (Emphasis added.)

█ No case of which we are aware discusses what is meant by the word "knowingly," in § 449(f). Yet, as we shall discuss, it is plain that, in the context of the phrase "knowingly participates in the violation" of § 442(d), "knowingly" simply means that it must be shown that the defendant had knowledge of the facts that constitute the offense. Such is the meaning generally attributed to "knowingly" (or its variations) when used in this fashion in criminal statutes. *See* WAYNE R. LAFAVE, SUBSTANTIVE CRIMINAL LAW § 5.2(b) (2d ed. 2003). This meaning of "knowingly," moreover, comports with that given the same term elsewhere in the Criminal Law Article of the Maryland Code. *See, e.g.,* Md.Code (2002), § 11–201(c) of the Criminal Law Article ("CL") (defining "knowingly" as meaning "having knowledge of the character and content of the matter"); CL § 7–102(b) (defining knowing conduct in the theft statute, and stating that "[a] person acts 'knowingly[,]' " *inter alia,* "with respect to conduct or a circumstance as described by a statute that defines a crime, when the person is aware of the conduct or that the circumstance exists . . .").

The Supreme Court's decision of *Bryan v. United States,* 524 U.S. 184, 118 S.Ct. 1939, 141 L.Ed.2d 197 (1998), is particularly instructive. In that case, the Court was presented with the task of construing what is meant by the term "willfully," in the section that sets forth the penalty for

violating certain provisions of the Firearms Owners' Protection Act. *Id.* at 186–89, 118 S.Ct. 1939. *See generally* 18 U.S.C. § 924(a)(1)(D). That act, incidentally, was enacted in part "to protect law-abiding citizens with respect to the acquisition, possession, or use of firearms for lawful purposes." *Bryan,* 524 U.S. at 187, 118 S.Ct. 1939. By the act, Congress amended certain provisions of the Omnibus Crime Control and Safe Streets Act of 1968 to "add a scienter requirement as a condition to the imposition of penalties for most of the unlawful acts defined in § 922." *Id.* at 187–88, 118 S.Ct. 1939. Congress enacted, *inter alia,* § 924(a)(1), which at the time provided:

Except as otherwise provided in this subsection, subsection (b), (c), or (f) of this section, or in section 929, whoever—

(A) *knowingly* makes any false statement or representation with respect to the information required by this chapter to be kept in the records of a person licensed under this chapter or in applying for any license or exemption or relief from disability under the provisions of this chapter;

(B) *knowingly* violates subsection (a)(4), (f), (k), (r), (v), or (w) of section 922;

(C) *knowingly* imports or brings into the United States or any possession thereof any firearm or ammunition in violation of section 922(*l*); or

(D) *willfully* violates any other provision of this chapter, shall be fined under this title, imprisoned not more than five years, or both.

*Bryan,* 524 U.S. at 187, 188–89 n. 6, 118 S.Ct. 1939 (quoting 18 U.S.C. § 924(a)(1)) (emphasis added).

Of relevance to the case *sub judice,* the *Bryan* Court construed "willfully" by reference to the term "knowingly," in the same section. Bryan argued that a more particularized *mens rea* must be established in cases charging a violation of acts listed in § 924(a)(1)(D), because, *inter alia,* Congress otherwise used the word "knowingly." The Court said in response: "This argument is not persuasive because the term

'knowingly' does not necessarily have any reference to a culpable state of mind or to knowledge of the law." 524 U.S. at 192, 118 S.Ct. 1939. Rather, "unless the text of the statute dictates a different result," a statute that prohibits the "knowing" participation in an illegal act simply requires proof that the participant has "knowledge of the facts that constitute the offense." *Id.* at 193, 118 S.Ct. 1939.

The Supreme Court came to the same conclusion, but in a different context, in *United States v. Bailey,* 444 U.S. 394, 100 S.Ct. 624, 62 L.Ed.2d 575 (1980). In that case, the Court held that the government fulfills its burden of proving a knowing violation of the escape statute "if it demonstrates that an escapee knew his actions would result in his leaving physical confinement without permission". *Id.* at 408, 100 S.Ct. 624. In other words, "[t]he knowledge requisite to [a] knowing violation of a statute is factual knowledge as distinguished from knowledge of the law." *Bryan,* 524 U.S. at 192 n. 14, 118 S.Ct. 1939 (quoting with approval *Boyce Motor Lines, Inc. v. United States,* 342 U.S. 337, 345, 72 S.Ct. 329, 96 L.Ed. 367 (1952) (Jackson, J., dissenting)); *see also United States v. Mitchell,* 209 F.3d 319, 322 (4th Cir.) (quoting *Bryan,* and holding that the knowledge required for a violation of 18 U.S.C. § 924(a)(2) is " 'knowledge of the facts that constitute the offense' "; therefore, actual knowledge that it was illegal for Mitchell to possess a firearm under 18 U.S.C. § 922(g)(9) was not required for his conviction), *cert. denied,* 531 U.S. 849, 121 S.Ct. 123, 148 L.Ed.2d 78 (2000).

Guided by the General Assembly's definition of "knowing" in other criminal provisions, and by the federal authorities we have discussed, we hold that "knowingly participates" in a violation of § 442(d) means participation with knowledge of the facts that make out a violation of that subsection. The State, then, need only prove that the defendant participated in a transfer of a regulated firearm with the knowledge that a firearm (as opposed to some other item) was being intentionally (as opposed to accidentally) transferred. *Cf. Dawkins v. State,* 313 Md. 638, 651, 547 A.2d 1041 (1988) (holding "that 'knowledge' is an element of offenses" charging possession of a

controlled dangerous substance, and that "[t]he accused, in order to be found guilty, must know of both the presence and the general character or illicit nature of the substance"). We disagree with appellant that the State must also prove that the defendant knows that the transfer is being made without compliance with the application process.

Proof of knowledge "may be inferred as a matter of fact from the actor's conduct and the attendant circumstances." *Young v. State,* 303 Md. 298, 306, 493 A.2d 352 (1985). In this case, Nguyen wrote in his statement for the police that he asked appellant if he, Nguyen, "could hold on to [appellant's] gun until I can get my guns back in a week or two because I felt uncomfortable without a gun." And he testified at trial that appellant gave him the nine millimeter handgun so he could test fire it, as a precursor to a possible purchase. Nguyen also testified that, when he called appellant to remind him that he still had the gun, appellant said, "that's cool, just keep it in the house[,]" and told Nguyen that he would pick it up in the near future. Further, as the State points out, there was evidence that

> [appellant] obviously knew that he was transferring the weapon to Nguyen. As a police officer, [appellant] also knew what needed to occur in order for Nguyen to gain possession of the gun. As testified to by Sergeant Szimanski, [appellant] himself had fulfilled those same requirements when he purchased his gun, filled out the necessary application, and then obtained possession of the gun after the necessary waiting period. These factors support the conclusion that [appellant] knew what was required in order to effect the transfer of the weapon and chose to disregard it.

(citations omitted).

As we have said, it is not required for a conviction of knowingly violating § 442(d) that appellant knew that the application process had not been completed, much less that it is illegal to transfer his handgun in the manner he did. Even so, there was presented in this case evidence that appellant

 

knew precisely what the law required and that he and Nguyen were circumventing it, making this a particularly egregious violation of the statute. Because the evidence was legally sufficient to sustain the court's finding that appellant knowingly violated § 442(d), we shall not disturb that judgment.

**JUDGMENT AFFIRMED.**

**COSTS TO BE PAID BY APPELLANT.**